NORRIS *et al.* vs. DUNN *et al.*

1. Where, after the death of a land-owner, his estate, which was of less value than $500.00, was set apart as a year's support for his widow and three children by her, without mentioning two children of the decedent by a former marriage, and the persons to whom the year's support was so set apart took exclusive possession of the property under claim of title, this constituted a severance from the other children, and a prescriptive title began to run; and if that claim, accompanied by such possession, was continuous, adverse, open, notorious and peaceable for the statutory period after the excluded children became of age, then the prescription ripened into a perfect title, unless it originated in fraud to which the claimants were parties, and which was kept concealed from the adverse parties without *laches* on their part.

(*a*.) Adverse possession against a co-tenant may begin to run after actual ouster, or exclusive possession after demand, or express notice of adverse possession.

(*b*.) Although the proceedings may have been irregular, the judgment purporting to vest the title in the applicants for a year's support was color of title on which prescription could be based.

(*c*.) Fraud will not be presumed from the mere omission from the proceedings of the names of some of the children who lived with their grandparents, and for whose support provision had been made by the decedent.

JACKSON, C. J., concurred.

BLANDFORD, J., dissented.

November 13, 1883.

Year's support. Color of Title. Prescription. Judgment. Before E. WOMACK, Esq., Judge *pro hac vice*. Pike Superior Court. October Term, 1882.

Reported in the decision.

J. S. POPE; W. S. WHITAKER, for plaintiffs in error.

E. F. DUPREE; JOHN I. HALL, for defendants.

HALL, Justice.

Dunn died, leaving a widow and five minor children; two of these children were by a former marriage, and had been consigned by the father, in his lifetime, to the care and protection of their maternal grandfather. It is alleged that they belonged to the grandfather's family at the death of the father, that he had provided out of his slender means for their support in that family, and had given up all parental authority and control over them, and conse-. quently that they were not a portion of his family at the time of his death.

His estate, at his death, was not worth $500. His widow applied to the ordinary of Pike county, to set apart a year's support for herself and three minor children. Upon this application, commissioners were appointed, who valued the entire estate at less than five hundred dollars, and it was set apart to the widow and her minor children. No schedule of the property thus set apart was returned, but notwithstanding this, the court of ordinary, by its judgment rendered upon this return, allowed it as a year's support to the widow and her minor children. Under this judgment they took possession of it, used it exclusively as their own, receiving its income, paying taxes on it, and accounting to no one for it or its proceeds; they put improvements upon it, and continued in the exclusive use and enjoyment of it for about fourteen years without interruption or counter-claim, when the present bill was brought by the children of the former marriage for a partition of the land thus set apart, against the widow and her children. To this bill the defendants pleaded the statute, setting up their prescriptive title to the premises, claiming that the

suit was not brought until more than seven years had elapsed from the date when the youngest of the complainants had attained her majority. The evidence fully sustained this latter fact; indeed it was not contested. Under the charge of the judge *pro hac vice* presiding in place of the judge of the circuit, a verdict was found in favor of the complainants, and the defendants moved to set it aside and asked for a new trial upon various grounds, which was refused, and exception was taken to this judgment refusing the new trial, and brought here by writ of error.

In our view, it is not material to notice any other ground than that relating to the defendant's claim of a prescriptive title. The charge excepted to will be found in the 12th and 13th grounds of the motion, and is as follows: "If the jury believed, from the evidence, that Catherine Norris (formerly Dunn), one of the defendants in the case, and her three minor children went into possession of the land in dispute under a setting apart of the same as a year's support to them, whether the setting apart was legal or not, and believed they had a right and title to said land by reason of its having been set apart to them as a year's support, and remained in continuous possession of the same for seven years' after complainants became of age next before the filing of the bill, and that complainants had, on arriving at age, express notice of such possession and claim of title of said Catherine and children, then complainants would be barred from a recovery, and they should find for the defendants." At the verbal request of complainants' solicitor, made in the presence of the jury, who stated that " he did not understand the latter part of the charge," (as to express notice) " and did not think the jury did," the court repeated and emphasized the same, saying: " I charge you again, gentlemen of the jury, that in order for the statute of limitations to run in favor of defendants' prescriptive title, complainants must have had express notice of the possession and claim of title by the defendants, and that the statute of limitations would only

begin to run from the time of such express notice to complainants. It makes no difference how they receive notice, but complainants must have had express notice."

Admitting that the complainants claimed to be tenants in common with the defendants, and that they were so in fact, at the death of Dunn, the husband of the widow and father of all the children, and were originally seized jointly with the defendants, and that the possession of the latter was that of the former,—that they held in subordination and not adversely to the true title, yet when there was a severance of this tenancy in common as between the widow and her children on the one side and the complainants on the other, as there unquestionably was by the setting apart of the premises to the said widow and her children as a year's support to the exclusion of the complainants, then the prescriptive title of the defendants commenced; and if this claim of title was accompanied by the exclusive possession of the defendants and that claim accompanied by such possession was continuous, adverse, open and notorious for the statutory period, then it ripened into a perfect title, unless it originated in a fraud to which the claimants were parties and which was kept concealed from the adverse party, who were vigilant in their efforts to discover it but failed to do so.

If there were no question of a joint right of possession in the case, these positions would not be questioned for a single moment. But how stands the law in case of tenants in common? The Code, §2303, will answer it. According to that, "there can be no adverse possession against a cotenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession; in either of which events, the co-tenant may sue at law for his possession."

It is not pretended on the part of the defendants that they rely upon either of the two last conditions. They do not set up exclusive possession after demand; nor do they claim that they gave express notice to the complainants

of adverse possession. They do insist, however, that the proceedings before the ordinary, coupled with exclusive possession, under the right thereby accruing to them, for the time required by law, was an actual ouster, and that, when the court charged that express notice was essential to the perfection of their claim, he charged upon a different case from that made by the pleadings and proof, and withdrew from the consideration of the jury the only question upon which they rested their right as against the complainants; that so far from assisting the jury to reach a correct conclusion, this charge misled and diverted them from the proper field of inquiry and investigation. Whether they are right or not, will depend upon what amounts to an actual ouster.

In *Doe, ex dem. Horne, vs. Roe & Howell,* 46 *Ga.,* 9, this court held that " where a tenant in common conveyed the whole lot to a third person, and the grantee took possession, claiming the entire lot as his own, this action constitutes a disseisin and ouster of the other tenants in common, and they are barred from asserting their right to such property after the expiration of seven years." . See also Freeman's Co-tenancy, §224, and the numerous cases cited in note 2 there. In Prescott *vs.* Nevers, 4 Mason C. C., 330, the rule is thus laid down by Story, J.: " I take the principle to be clear that, where a person enters into land under a claim of title thereto by a recorded deed, his entry and possession are referred to such title."

In this case it may be said there is no recorded deed; but the defendants rely upon something equally as potent, viz.: the judgment of a court of competent jurisdiction, purporting to vest the title in them. In Clymer's Lessee *vs.* Dawkins *et al.,* 3 Howard, 688, the plaintiffs relied upon the fact that the defendants derived their title from a judgment of partition. which was alleged to be absolutely void; certainly the plaintiff in the suit (one of the original co-tenants) was no party to the proceeding for partitioning the land. The court, however, said in reply to this objection, that " it was wholly unnecessary to decide

whether those proceedings were absolutely void or not; for, assuming them to have been defective or invalid, still, as they were matter of public notoriety, of which Clymer, the plaintiff, was bound, at his peril, to take notice, and as Lynch and Blanton (his original co-tenants) under those proceedings claimed an exclusive title to the land assigned to them, adversely to Clymer, if the defendants entered under that exclusive title, the possession must be deemed adverse, in point of law, to Clymer." Again, *Ib.*, p. 689, it is said: "When some notorious act of ouster or adverse possession, which is brought home to the notice or knowledge of the other co-tenants occurs, the possession is, from that period, treated as adverse to the other tenants, and it will afterwards be as operative against them, as if the party had entered under an adverse title. Now such a notorious ouster or adverse possession may be by any overt act *in pais*, of which the other tenants have due notice, or by the assertion, in any proceeding at law, of a several and distinct claim or title to an entirety of the whole land, or, as in the present case, of a several and distinct title to the entirety of the whole of the tenant's property under a partition, which, in contemplation of law, is known to the other tenants." The learned Judge Story, delivering this opinion, deems this doctrine so familiar that it seems scarcely necessary to cite any authorities. He does, however, cite quite a number of cases, both English and American, in its support, beginning with Townsend and Pastor's case, 4 Leonard's R., 52, and continuing the list down to 1845, the time of the decision he was then rendering. These citations need not be repeated here, they are set out and commented upon in the opinion from which we have quoted. Since that time there have been others affirming and enforcing the same principle. Freeman's Co-tenancy, §227.

If the foregoing cases lay down the law correctly, of which we entertain no doubt, they effectually dispose of the one at bar. Indeed §2303 of the Code announces, in

a brief but accurate and comprehensive form, the identical doctrine, and gives the rule by which we must be guided to our conclusion.

We cannot infer fraud from the bare fact, that the names of the complainants do not appear in the proceedings before the ordinary to have the year's support set apart. The court may have been apprised of all the facts, and may have deemed it unnecessary, under the circumstances of the case, to make provision for them, as that had been done in the lifetime of their father.

Judgment reversed.

JACKSON, Chief Justice, concurring, said : I concur in the judgment. On the death of the decedent, the title descended to the widow and all the children, and they were then all tenants in common. But the law allows the widow to apply for and have set apart a year's support for herself and the children of the decedent, and this court has held that the widow may sell the property set apart for a year's support, and use it up for the benefit of the family. So that, if the judgment of the ordinary was wrong, it at least gave color of title; and if, instead of using up the property, it was held under the judgment for the statutory time, a prescriptive title ripened. I am inclined to think that the judgment of the ordinary vested the title in widow and children named therein; but if, because of irregularity or otherwise, it did not vest the title in them, it at least purported so to do, and was therefore color of title; and with such possession as the statute prescribes, a prescriptive title could be based thereon.

BLANDFORD, Justice, dissenting:

The question in this case is, does the setting apart of a twelve months support to a widow and certain minor children of her and her deceased husband, by the ordinary, vest the property in such widow and children to the exclusion of other minor children of the deceased husband

to such an extent as to make such setting apart by the ordinary color of title in favor of the widow and her children named in the application to the ordinary, which, with possession of the property for the statutory period, will bar the other minor children of the husband by a former wife.

I maintain that the setting apart of the property by the ordinary for a twelve months' support was not a judicial but a ministerial act, unless objections to the return of the commissioners had been made, and when the ordinary passed upon the objections this action was judicial, not ministerial, and unless objections be filed there is no plaintiff and defendant before the court—no case; so that the mere filing and recording of the returns of the commissioners as provided by §2573 of the Code, by the ordinary, are merely ministerial acts, such as were done by the ordinary in the present case. The object of all the provisions of the statute is to provide for the widow and all the minor children of the deceased husband for twelve months after his decease, so that creditors of the husband shall not deprive the widow and children of this support from the husband's estate.

Under the laws of this state, when a person dies his real estate descends to his heirs at law, subject to be sold by his administrator for the payment of his debts, as personal property is, and all of his children inherit equally *per capita*. But this rule of descent is changed when property has been set apart to the widow and children of the deceased husband. Then the same vests in and becomes the property of the widow and all the minor children of the deceased husband, whether the children be by a former wife or not; and if there should be adult children, they will not be entitled to any part of the property so set apart, though it may be the whole of the property left by the deceased ancestor. Thus it is as to the property set apart; another rule is adopted as to the distribution of intestates' estates. Until the property is so set apart, then the gen-

eral rule of distribution applies; but immediately after the property is set apart, then the same vests in the widow and all the minor children of the deceased husband. Code, §§2574, 2576.

What relation do the widow and minor children sustain to each other as to the property set apart? That they are tenants in common as to this property all admit, and no one can doubt. The law casts the title, by the act of the ordinary setting apart the property, upon the widow and all the minor children of the deceased husband. Those children by a former wife, if they be minors, take, under the law, equally with the children by the last wife, they are tenants in common as to such property set apart. The application made to the ordinary being by the widow for herself and her three minor children, there being no mention of the two minor children by a former wife of the husband, and the setting apart to the applicant, by the ordinary, did not change the law. When this property was set apart by the ordinary, the law came in and vested the same in the widow and all the minor children of the deceased husband, those left out of the application as well as those embraced therein. This was the force of the law, and no act of the widow or ordinary could break or impair this force of the law; so that the widow and her children took this property upon the same terms, to the like extent, and no more, as the two minor children of her deceased husband whose names were left out of the application. Such was the operation of the law, and when the widow with her children went into possession of this land set apart, as aforesaid, her possession was the possession of all the children of her deceased husband; they were tenants in common; they held this land *per my et per tout*, and all the relations and the law regulating or applying to tenants in common applied to these parties.

This widow went into possession of this land with her children under the setting apart by the ordinary; she then became a tenant in common with the other children of her

deceased husband; her possession was their possession; she did no act save to go into and enjoy this property, which she had a right to do; and this was not inconsistent with the rights of the two minor children of her husband by a former wife; there was no actual ouster, because all the acts and conduct of the widow was entirely consistent with her rights to this property and the rights of the other co-tenants. What did she do which amounted to an actual ouster as to these defendants in error, her co-tenants? All that is shown is that she went into possession and used this land for the support of herself and children; this she had the right to do; this does not constitute an actual ouster of her co-tenants; if so, then the possession of one co-tenant is not the possession of all. There was no demand by the plaintiffs in the bill, who were the children of the deceased husband by a former wife, until a short while before the commencement of this suit, and when such demand was made, they were refused to be let into possession with the widow. This was the first and only notice which they ever had that the widow claimed the exclusive possession of this land, and this was but a few weeks before the commencement of this suit. §2303 of the Code provides as follows: "There can be no adverse possession against a co-tenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession." I think I have shown that both plaintiffs and defendants were tenants in common; that they held this land by one and the same right; that the widow and her children who went into possession of this land did no act which amounted to an actual ouster until the demand was made upon them; that there was no exclusive possession by them until this demand was made; that there was no express notice of adverse possession on the part of the widow until the demand was made by the plaintiffs, and that this demand being made only a few weeks before the bringing of this suit, the plaintiffs are not barred of

their rights by the statute of limitations. This being my opinion, I think the decree rendered by the court below should be affirmed.