McDowell *vs.* Sutlive *et al.*

1. Where one claiming title to land brought ejectment therefor against the tenant in possession, and by agreement of the defendant and counsel for the plaintiff a consent verdict was rendered, finding for the plaintiff four-sevenths of the property and for the defendant three-sevenths, this was conclusive on the parties and their privies; and in a subsequent action of ejectment, brought by one who claimed under a sheriff's sale made under a judgment against the real claimant, under whom the tenant in possession had held, and a grantee under the plaintiff in the original ejectment suit, the parties could not trace their right to the premises further back than the judgment in ejectment; nor could they rely on the title

involved in that issue, and which existed at the time the verdict was taken, to overturn it.

2. Although the term of the tenant in possession may have ended before the rendition of the judgment, yet as he remained in possession during the trial and after the verdict was rendered, the presumption is that he remained there as tenant in common of the parties, and in subordination to the title of the person under whom he held. Nor could he attorn to the plaintiff in ejectment and become his tenant, without having first surrendered the possession to the person under whom he held.

(*a*) There can be no adverse possession against a co-tenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession.

(*b*) When the plaintiff in the original ejectment cause conveyed the entire land to another, who took possession thereunder, this operated as a disseisin and ouster of the other tenants in common, and would have barred their rights after the expiration of seven years from its execution, but that time had not elapsed before the bringing of this suit.

3. Substantial improvements made on the land of a permanent character, and their value, might have been shown as a set-off against mesne profits, had the offer of such evidence been specific and made at the proper time; but where, after the close of the testimony and pending the argument, counsel for defendant offered in general terms to produce evidence to show such improvements, and that they were worth more than the mesne profits claimed, and stated that he had intended to make such proof, but had unintentionally omitted to do so, there was no abuse of discretion in refusing to reopen the case and admit the testimony.

4. Where, pending the introduction of testimony, a recess was taken by the court, and the jury were allowed to disperse, under instructions not to suffer any one to talk to them about the case; and where counsel for the plaintiff arose in open court and stated that he had learned that a juror named knew some facts about the case, and that he might desire to examine such juror as a witness after the recess, and asked the privilege of inquiring of him during the recess what he could testify; and where the court, knowing the juror to be one of the most respectable citizens of the place, directed, over the objection of defendant's counsel, that counsel for plaintiff might converse with the juror about that point and for that purpose only, stating that the other side could have the same privilege; and where it seems that the privilege so granted was not abused, this furnishes no ground for a new trial.

5. The verdict was justified, if not required, by the evidence.

February 8, 1887.

Judgments. *Res Adjudicata.* Ejectment. Estates. Landlord and Tenant. Prescription. Ouster. Betterments. Jury and Jurors. Practice in Superior Court. Before Judge JOHN T. CLARKE. Early Superior Court. April Term, 1886.

Reported in the decision.

E. C. BOWER, by J. H. LUMPKIN, for plaintiff in error.

R. H. POWELL, by brief, for defendants.

HALL, Justice.

From this confused and intricate record, made so by former proceedings in the case, we deduce the following facts : It appears that in 1869 or 1870, one Broadwater cultivated the premises in dispute as the tenant of Bethea. In the latter year, William H. Powell, and other parties under whom he claimed, brought ejectment against Broadwater to recover the land. To this suit Broadwater filed issuable pleas, but does not seem to have vouched his landlord as the real party. The case was tried in 1871, and by consent of counsel representing the parties, a verdict was returned finding four-sevenths of the lot in favor of the plaintiff, and the other three-sevenths in favor of the defendant. O n the first of September, 1871, three-sevenths of this land was levied on by an execution in favor of Crawford against Bethea. At the sale under this levy Buchanan became the purchaser and afterwards conveyed to Sutlive. Wm. H. Powell conveyed the entire tract of land to McDowell by deed dated March 3rd, 1884. Buchanan and Sutlive, on the 10th of March, 1884, brought ejectment on their several demises in Early superior court, against Enoch Warren, tenant in possession, and McDowell, who claimed to be the true owner of the land, to recover three-sevenths of the undivided interest thereof To this action the defendants pleaded the general issue and

prescription, but on the hearing there was a verdict in favor of the plaintiff, and the defendant made a motion for a new trial on various grounds, which was overruled, and thereupon he brought the case here for review.

The first, second and third grounds of the motion are, because the verdict was contrary to law, evidence, the weight of evidence and the charge of the court. The fourth and fifth grounds of this motion are not verified by the presiding judge, and therefore cannot be considered.

(6) The sixth alleges error in refusing to allow the defendant to introduce in evidence plat and grant to the lot of land in dispute, the objection being that the grant did not have the seal of the State attached to it, and on that account it was rejected, unless its absence could be accounted for. In attempting to account for its absence, the defendant showed that it was the original plat and grant which his immediate grantor had received from those under whom he claimed; that it then had the seal to it, which subsequently had been broken off by some accident, and which by oversight had been left at home by the witness, in Griffin, among some papers he had intended to bring to the court; that it was the seal to that grant and "was all right," but was broken from the tape that attached it. The grant in this mutilated condition was presented to the court for inspection, and appeared, as alleged, to be genuine, having no other suspicious circumstances about it. The court held that, being accessible, it should have been produced, that secondary evidence was not admissible, and that the best evidence of its genuineness was the seal itself.

(7) That there was error in refusing to allow the defendant to prove that he had placed valuable improvements on the land by clearing it, making fences and building houses, which improvements were permanent and actual betterments, equalling in value if not more than the amount of mesne profits proved on the trial. This evidence was not offered until after the evidence had closed

v 78-10

and the opening argument on all of the case, except as to the rents, had been concluded, counsel stating that he had intended to make the proof offered, but had unintentionally omitted to do so.

(8) Because there was error in the charge to the jury that, "One who buys land at sheriff's sale, which is sold as the property of a defendant who had been in possession of it after the date of the judgment, is not required to go back and show regular title in the defendant in *fi. fa.* All that is necessary to make out the title *prima facie* is to show a valid judgment, levy and sale, and that the defendant in *fi. fa.* had such possession as would *prima facie* show the land subject to the levy. Upon this being shown, plaintiff would have a right to recover, unless the defendant could show that the defendant in *fi. fa.* did not have title at or after the date of the judgment, or that the defendant in the case had since acquired a better title."

(9) Because the court erred in allowing counsel for the plaintiff, without the consent of counsel for the defendant, to have a private consultation with a member of the jury, after the jury had been selected and sworn to try the case, and a portion of the evidence had been introduced on both sides. The consultation was allowed for the purpose of ascertaining the facts to which the juror could testify in the case, it being shown that counsel had no further consultation with the juror than to ascertain what his testimony would be. In certifying this ground, the judge makes the following explanation: The regular time for recess having arrived, he permitted the jury to disperse, instructing them to suffer no one to talk to them about the case during the recess; and thereupon, one of the counsel for the plaintiff arose in open court, and stated that a juror (naming him) knew, as he had learned, some facts about the case, and that he might desire to examine him after the recess, asking the privilege of inquiring of him in the recess what he could testify. The court, knowing the juror to be one of the most respectable citizens of the

place, against the objection of defendant's counsel, directed that plaintiff's counsel and the juror might converse about that point, and for that purpose only, stating that the other side could have the same privilege.

(10) The tenth ground is a mere repetition and enlargement of the first three grounds of the motion.

(11) Because the court erred in refusing to allow the defendant to introduce a deed from Wm. Hale to Morris, dated 16th of July, 1853, which deed had been properly recorded and came from the proper custody; the deed having been objected to because of vague and insufficient description to identify the premises, or interest therein and thereby conveyed. The court rejected it, either as evidence of title or as a foundation to prove color of title.

1. Neither party could trace his right to the premises in dispute farther back than the judgment in ejectment, rendered in Early superior court in 1871, in the suit at the instance of *Powell et al. vs. Broadwater;* that being a consent verdict, the parties to it were bound thereby, and could not rely upon the title involved in that issue, and which existed at the time the verdict was taken to overturn it. It was conclusive as between them and their privies in estate, and they could not go behind it. This disposes of the sixth and eleventh grounds of the motion for new trial. The grant and deed offered in evidence and rejected, as set forth in that ground, were passed upon on the trial of that action of ejectment, and this dispenses with the necessity of considering the grounds upon which the rejection of this document seems to have been put by the court. It is true the defendant contended that he might set them up as independent title, notwithstanding the judgment in the ejectment suit. The code, however, (§3362) speaks a different language. A judgment in ejectment is conclusive as to the title between the parties thereto, unless the jury find for the plaintiff less than the fee. The finding in this instance was three-sevenths of the fee.

2. Although Broadwater's term of renting from Bethea may have ended in 1870, before the rendition of the judgment, yet as he remained in possession of the land during the trial and after the verdict was rendered, the presumption is that he remained there as tenant in common of the plaintiffs in that ejectment suit, and in subordination to the title of Bethea. He agreed to become Powell's tenant for the entire premises, and attorn to him as his landlord. This, under the law, he could not do without having first surrendered the possession to Bethea. He could not dispute Bethea's title, nor attorn to another claimant while he was thus in possession. Code, §§2282, 2283. There is, moreover, evidence in this record that, after the land was purchased at the sheriff's sale by Buchanan, Broadwater agreed to hold three-sevenths of the same as his tenant.

There can be no adverse possession against a co-tenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession. Code, §2303. Therefore, after the purchase by Buchanan of this three-sevenths undivided interest in the land, and the conveyance by Buchanan to Sutlive, notwithstanding Broadwater claimed to hold for Powell, he held also for Sutlive. There is no evidence of any actual ouster in this case, or exclusive possession after a demand made on either or both Buchanan and Sutlive, and there is no pretence that any notice, express or implied, was ever given to them, or either of them, of any adverse holding by their co-tenant, or any one claiming to hold under him.

The deed from Powell to McDowell to the entire tract of land, especially if McDowell took possession under it, as he seems to have done, operated as a disseisin and ouster of the other tenants in common, and would have barred their right to the property after the expiration of seven years from its execution. *Norris et al. vs. Dunn et al.*, 70 *Ga.* 796–800, citing *Doe, ex dem. Horne, vs. Roe and Howell*, 46 *Ga.* 9. Seven years had not elapsed from that time to the bringing of this suit, and the plea of prescription,

under the circumstances, will not avail to defeat the action of the present plaintiff. There is nothing in the charge of the court, as set out in the eighth ground, that does not accord with these principles; and what we have said fully sustains the charge.

3. The finding in this case being for three-sevenths of the premises and $66 mesne profits, and the improvements of the tract of land having been made by the defendant on the whole land, the offer of evidence to show that the improvements were worth as much as the mesne profits claimed by the plaintiffs, would have been proper, had that offer shown specifically in what these improvements consisted, and the value of each item thereof, so that the jury might have determined from the facts thus given in evidence whether such improvements were sufficient to set off the whole of the mesne profits the plaintiff had proved; but such was not the offer made. As stated in the seventh ground of the motion, it was merely proposed in a general way to show what the improvements were, nothing more being said about their value than that they were sufficient to extinguish the claim set up by the plaintiff for mesne profits. This latter was matter of conclusion to be drawn by the jury from the facts in proof, and could not be stated by the witness; besides, the offer was not made until the close of the evidence in the case, and until after it had been partially argued. The judge was not bound to receive the evidence at that time, even under the statement made. It was discretionary with him, if it had been otherwise unobjectionable, to have allowed its introduction. That point of the trial having been closed, had it been reopened, this might have led to the introduction of further evidence on the part of the plaintiff, or might have forced a continuance of the case to enable him to get proof to meet this new evidence. It does not affirmatively appear that the defendant really suffered any injury for the want of this testimony, or that he could have reduced

the finding by the evidence offered.   It is certainly incumbent upon the party alleging error to show it.

4. The ninth ground of the motion excepts to a permission granted by the court to the party to converse with one of the jurors whom he wished to make a witness, upon a point to which he wished to use him as a witness.   It seems that he conversed with him upon no other subject, and that the privilege was not abused.   Had defendant's counsel seen proper to do so, he could have been present at the interview and guarded himself against any abuse of the privilege, as permission was given him to avail himself of the same privilege.   We know of no law that prevents a party from ascertaining what his witness is likely to prove, whether that witness be on or off the jury.   It was proper, under the circumstances, to call the attention of the court to the matter, and to obtain permission to exercise this privilege.   We are satisfied it was not abused, and that the exception is therefore not well taken.

5. So far from the verdict being contrary to law or evidence, it would seem to have been justified, if not imperatively demanded, by both.

Judgment affirmed.